STATE EX REL. MUELLER ET AL., RELATORS, *v.* DISTRICT
COURT ET AL., RESPONDENTS.

(No. 6,656.)

(Submitted March 3, 1930.   Decided March 11, 1930.)

[285 Pac. 928.]

110

*Messrs. Belden & DeKalb, Messrs. Ayers & Ayers, Mr. Ralph J. Anderson,* and *Mr. E. K. Cheadle,* for Relators, submitted an original and a reply brief; *Mr. O. W. Belden* and *Mr. Cheadle* argued the cause orally.

*Mr. C. A. Spaulding, Mr. Jack Briscoe, Mr. J. E. McKenna, Mr. Stewart McConochie, Mr. Howard Gee* and *Mr. Rufus Hopkins,* for Respondents, submitted a brief; *Mr. Spaulding* and *Mr. McConochie* argued the cause orally.

Opinion: PER CURIAM.

This is an application for a writ of prohibition to be directed to the district court of Fergus county and Honorable Edgar J. Baker, one of its judges. The petition shows that Oscar O. Mueller is the mayor of the city of Lewistown, and H. M. Traywick is a member of the police commission of the city, his colleagues on the commission being C. L. Covell and H. R. Hampton; that on February 3 the mayor filed with the police commission charges against E. W. Ray, a police officer and the chief of police, accusing him of misconduct in his office and neglect of the duties thereof. The commission immediately duly gave notice to Ray, summoning him to answer the charges on February 13, 1930. On February 12 Ray applied to Judge Baker for a writ of prohibition to restrain Traywick from sitting as a member of the commission during the trial.

The basis of Ray's application is, as is disclosed by his affidavit, that Traywick is prejudiced against him. It is set forth, among other allegations, that Traywick was a prime mover in having the charges filed; that Traywick is personally hostile to Ray; that, upon being asked by one Barney "what he was going to convict E. W. Ray on," Traywick replied: "On the evidence and what we personally know about him." The judge entertained the application and issued an alternative writ of prohibition, restraining Traywick from acting in the matter until the further order of the court, and requir-

ing him to show cause on February 18 why he should not be permanently restrained from so doing. On February 18 Ray sought permission to file an amended and supplemental petition in support of his application for a writ of prohibition, and the matter was continued until the next day, when, the matter having been argued by respective counsel, the court took it under advisement, with direction that the restraining order remain in full force pending the consideration of the cause.

On the 21st of February Mueller and Traywick made application to this court for a writ of prohibition to restrain the district court of Fergus county and Judge Baker from interfering with Traywick in the performance of his duties as a member of the commission. In the application filed in this court, after allegations from which the foregoing information appears, it is alleged that Covell and Hampton, a majority of the commission, not being under restraint, conducted the trial of Ray, heard the evidence offered by the respective parties, viewed the witnesses and examined the documentary evidence; that Traywick, not being restrained by the writ from listening to and hearing the evidence submitted to the commission, proceeded to and did sit and hear all and singular the evidence submitted by all parties in the proceeding, viewed the witnesses and the documentary evidence; and that he is now in a position to enter into deliberations with his colleagues upon the commission without bias and prejudice, and to join them in rendering a decision upon the merits of the controversy, and will do so if the restraint is removed; and that it is unlikely that any decision of the commission can or will be reached until he joins his colleagues in the consideration of the evidence submitted.

Upon the application filed by relators we issued an order requiring respondents to annul the alternative writ of prohibition, to show cause why they should not do so on March 3, 1930. We did not issue a restraining order. Judge Baker has not taken any further action in the proceeding pending before him, so far as we are advised. But at the time ap-

pointed respondents interposed a motion to quash the order to show cause, and we have had the benefit of exhaustive arguments by opposing counsel.

1. This controversy takes its rise from the Metropolitan Police Law which the city of Lewistown has adopted.

Section 5100, Revised Codes 1921, as amended by section 4 of Chapter 119 of the Laws of 1923, provides that it shall be the duty of the police commission to hear, try and decide all charges brought by any person or persons against any member or officer of the police department, "including any charge that such member or officer is incompetent, or by age or disease, or otherwise, has become incapacitated to discharge the duties of his office, or has been guilty of neglect of duty, or of misconduct in his office, or of conduct unbecoming a police officer or has been found guilty of any crime, or whose conduct has been such as to bring reproach upon the police force." Any charge brought against a member of the police force must be in writing, in the form required by the commission, and a copy thereof must be served upon the accused officer or member at least three days before the time fixed for the hearing of the charge. It is the duty of the commission, at the time set for hearing the charge against the police officer, to forthwith proceed to hear, try and determine the same, according to the rules of the commission. The accused shall have the right to be present at the trial in person and by counsel and to give evidence in his defense. All trials shall be open to the public. At the conclusion of the hearing or trial the commission must decide whether the charge is or is not proven and it has the power by a decision of the majority of the commission to discipline, suspend, remove or discharge any officer who shall have been found guilty of the charge filed against him. The action of the commission, however, shall be subject to modification or veto by the mayor, made in writing, giving the reasons therefor, which shall become a permanent record of the commission. When a charge against a member of the police force is found proven by the board and is not vetoed by the mayor, the mayor must enforce

the decision of the board, unless he modifies it, "and such decision or order shall not be subject to review by any court on a question of fact." The district court of the proper county shall have jurisdiction in a suit brought by the accused "to determine whether the essential requirements of law as to the method of trial have been complied with, but no suit to review such hearing or trial or for re-instatement to office shall be maintained unless the same is begun within a period of sixty days after the decision of the Police Commission or order of the Mayor has been filed with the city clerk.  *   *   *   "

There is no inherent right of indefinite tenure in the office of policeman. The Metropolitan Police Law has fixed the conditions under which a policeman may be appointed, may continue to enjoy the office, and may be removed therefrom. (Compare *State ex rel. Dwyer* v. *Mayor of City of Butte,* 69 Mont. 232, 221 Pac. 524.) The members of the police force are guardians of the public safety and are directly chargeable with the enforcement of the laws. (*State ex rel. Bailey* v. *Edwards,* 40 Mont. 313, 106 Pac. 703.) When remiss in their duty, they are subject to discipline and even removal from office. (Sec. 5100, supra.) An accused officer is guaranteed a trial upon the charges against him before an independent, specially created tribunal which has exclusive jurisdiction of the subject matter. In other words, the police commission is a special tribunal, created by statute, having quasi-judicial powers to hear and determine charges preferred against a member of the police department. It is a subordinate and administrative tribunal, vested with disciplinary powers, and is not limited by the provisions of the Constitution which apply to courts. (*People ex rel. Flanagan* v. *Board of Police Commrs.,* 93 N. Y. 97; *People ex rel. Meyer* v. *Roosevelt,* 23 App. Div. 514, 48 N. Y. Supp. 537, 540; Id., 155 N. Y. 702, 50 N. E. 1121.)

The statute makes no provision for the disqualification of members of the commission on the ground of bias or

prejudice, and it must be held, in accordance with the law, that, regardless of the personal opinions of its members, this tribunal has exclusive jurisdiction of the subjects delegated to it, and its members are not vulnerable to such attack. Even with respect to judicial officers, it has been held in this state that, unless the statute provides a remedy declaring that bias or prejudice on the part of a judge shall be a disqualification, it cannot be lodged against the officer. (*In re Davis' Estate*, 11 Mont. 1, 27 Pac. 342; *In re Weston*, 28 Mont. 207, 72 Pac. 512.)

The rule of disqualification does not apply to officers not judicial, although every case may call for the exercise of judgment and discretion. (Works on Jurisdiction, 409; *State* v. *Wells*, 210 Mo. 601, 109 S. W. 758.)

The strict legal rules which apply to the disqualification of a judge sitting in a court cannot be applied to police commissioners, as the appellate division of the supreme court of New York said in *People ex rel. Meyer* v. *Roosevelt*, supra. In that case it appears that former President Roosevelt was a member of the board of police commissioners of the city of New York, and its president. The offense for which the policeman was upon trial was committed in the presence of Mr. Roosevelt and of commissioner Andrews, one of his colleagues, by whose testimony the facts were established. The right of commissioners Roosevelt and Andrews to hear and determine the guilt of the accused was challenged. The court said: "The police commissioners are the sole tribunal to hear complaints for violations of the rules and discipline of the police force, and the action of a majority of them is necessary to punish offenses and enforce discipline. Where that is the case, even a personal interest in the result is not sufficient to disqualify a member of the tribunal from sitting, if his presence is necessary to constitute the court." "As any ill conduct on the part of the policeman which is detected by one of the commissioners can only be punished by a vote of the board, of which he is a necessary member, it follows that in some cases, unless the commissioner who observed the miscon-

duct charged remained qualified to vote upon the question of the guilt of the person accused of it, and to decide upon his punishment, violations of the rule would necessarily go unpunished, and thus it would occur that the more vigilant and active the commissioners were in the performance of their duties, and in the inspection of the force, the more likely it would be that they would not be able to punish the members of the force for misbehavior. It can hardly be supposed that the legislature intended to establish any such condition of affairs.'' Both commissioners Roosevelt and Andrews voted to sustain the charges. The action of the commission was sustained by the appellate court, and its judgment was in turn affirmed by the court of appeals. (155 N. Y. 702, 50 N. E. 1121.)

The law intends that the police commission shall act in the interest of the public as well as in safeguarding the rights of the members of the police force. It is the commission's duty to act summarily in disciplining members of the police force who have disregarded their duty. It is possible that a serious infraction of duty might be made in the presence of all three of the commissioners who might be the sole witnesses to it and the prime movers in the accusation against the policeman. That the commissioners would be disqualified from acting in such case is absurd. Or it may easily be conceived that three of the policemen were charged with the same offense and each of the accused might be in a position to make the same challenge against the three commissioners as were made by Ray in this case. It is readily seen that such a challenge could not be sustained.

2. Furthermore, a *jurisdictional* question was not presented to the district court by Ray's affidavit, nor by his supplemental affidavit. Unless a statute provides that upon the filing of a disqualifying affidavit the officer challenged is deprived of jurisdiction—of the power to hear and determine the particular case—the jurisdiction of the officer sought to be thus challenged is not affected.

This court, in *Missoula Belt Line Ry. Co.* v. *Smith,* 58 Mont. 432, 193 Pac. 529, 531, said: "The term 'jurisdiction,' as used in the statute, is the power to hear and determine the particular case." (And see *Crawford* v. *Pierse,* 56 Mont. 371, 185 Pac. 315; *State* v. *District Court,* 35 Mont. 321, 89 Pac. 63; *State ex rel. King* v. *District Court,* 24 Mont. 494, 62 Pac. 820; *State ex rel. Whiteside* v. *District Court,* 24 Mont. 539, 63 Pac. 395.)

The writ of prohibition arrests the proceedings of any tribunal, corporation, board or person, whether exercising functions judicial or ministerial, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person. (Sec. 9861, Rev. Codes 1921.) The district court should not have entertained Ray's application for a writ of prohibition.

3. Respondents make the point that under the authorities this court should not issue a writ while the matter as to which it is alleged the lower court will exceed its jurisdiction is there pending and undetermined, and not until the relators here have exhausted their remedies in the lower court, citing *State ex rel. Heinze* v. *District Court,* 32 Mont. 394, 80 Pac. 673, *State ex rel. Mackel* v. *District Court,* 44 Mont. 178, 119 Pac. 476, and *State ex rel. Scollard* v. *District Court,* 47 Mont. 284, 132 Pac. 21. But the situation presented in those cases bears little, if any, analogy to that presented here. In the present case the district court already has exceeded its jurisdiction. It did so in entertaining the application and in issuing a restraining order, which is still in effect and which, unless annulled by this court, may remain in effect for an indefinite time. Clearly the proceeding pending before the police commission of Lewistown was none of the district court's business.

4. The police commission and its members should not be left in doubt as to its power to proceed. While commissioners Covell and Hampton, a majority of the commission, were trying Ray, commissioner Traywick was present at all times. He heard all they heard, saw all they saw, or, at least, saw and

heard as much as he would have seen and heard had he been sitting in his place as chairman of the commission. The fact that he was restrained from participating in the trial by the unwarranted action of the district court did not change his character as a commissioner, nor affect his right to join his colleagues in the final disposition of the case.

As it manifestly appears that the district court proceeded without and in excess of its jurisdiction, it is ordered that a peremptory writ of prohibition issue out of this court forthwith, directing the respondents to annul the restraining order and dismiss the proceeding upon which the order was issued.

All the Justices concur.