STATE OF MONTANA EX REL. GLEN F. FISH, RELATOR, *v.* INDUSTRIAL ACCIDENT BOARD OF THE STATE OF MONTANA, ROBERT F. SWANBERG, CHAIRMAN, RESPONDENT.

No. 10254.

Submitted May 11, 1961. Decided June 9, 1961.

362 P.2d 852

Frank Burgess, Harry C. Alley, Butte, Montana, argued orally for relator.

L. V. Harris, Helena, argued orally for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an original proceeding in which the relator seeks a writ of prohibition to prohibit the Industrial Accident Board from further consideration of a record taken at a hearing before a referee under circumstances hereinafter related. We granted an alternative writ on May 1, 1961, returnable on May 11, 1961.

On the return day the respondent Board appeared by a

motion to quash service of the writ, a motion to quash the alternative writ, and an answer on return to the alternative writ.

The petitioner is one of counsel for a claimant against the Industrial Accident Board under the Workmen's Compensation Act, R.C.M. 1947, § 92-101 et seq. The Board set a hearing on the claim for April 27, 1961, in Deer Lodge, Montana, designating one George Wood as the hearing examiner. The claim came on for hearing on that day. The petition alleged that during the course of the hearing, at the noon lunch hour, counsel for the claimant first discovered that the hearing examiner was not a regular employee of the Board, but was, in fact, engaged in a private enterprise as an insurance adjuster, his principal business being devoted to the settlement and adjustment of workmen's compensation claims, for and on behalf of insurance companies engaged in such business in Montana.

The petition then alleged that Wood's adjusting business was located in Missoula; that the insurance carrier involved in the instant claim was the Glacier Assurance Company with offices in Missoula; that the Board makes their award of compensation solely upon the recommendations of the hearing examiner, that no transcript of the hearing is made upon which the Board may review the evidence narrated; and that the Board exclusively determines the award upon the findings of the examiner.

The petition then alleged that the hearing examiner exhibited great prejudice at the hearing by compelling the claimant to testify, over objection as to the date on which he retained counsel to assist in protecting his claim, stating that such information was important to him.

It was then alleged that by reason of an alleged *conflict of interest* on the part of the hearing examiner that the claimant was denied a fair and impartial hearing as is his right under Article III, § 27, of the Constitution of Montana, and the

Fourteenth Amendment to the Constitution of the United States.

We previously stated that a motion to quash service of the alternative writ was made, but we do not deem that matter to be of importance to this opinion, and shall not discuss it.

However, we shall discuss the motion to quash the alternative writ and the answer and return to the writ. While the petition was vague as to whether the hearing examiner had been or was employed by the insurance carrier the answer and return makes clear that the hearing examiner was not an employee of the insurance carrier nor connected with the carrier in any manner. With this fact made clear then, the petition for the writ, in effect, charges that *ipso facto* an insurance adjuster has such a conflict of interest that he cannot grant a fair and impartial hearing. Of course, in addition, the petition did allege that the examiner exhibited great bias by requiring the claimant to testify as to his employment of counsel.

As to this latter matter, we do not have before us any of the record which would permit us to determine the relevancy of the question of employment of counsel, but upon oral argument counsel for the Board suggested several situations wherein such inquiry might be pertinent as to the length of time a claim lay dormant so as to go to the weight of testimony, etc. At any rate, no showing was made by the record, or by any statement of fact, or during argument just how the question and answer demonstrated bias.

The return affirmatively alleged that the hearing examiner was an experienced and well-qualified person to act, in that he was a former full-time employee of the Board for three years; that his findings had been *in favor* of claimants in ninety-five percent of the cases he had heard; that he was a well-qualified, impartial, and open-minded person.

We granted the alternative writ because of this court's desire to zealously guard the right to fair and impartial hearings. It is not necessarily the *fact* of bias that concerns us but

the *possibility* that bias might exist. This follows because of the provisions of section 92-109, R.C.M. 1947, which provides in part:

"* * * Every finding * * * made by any * * * referee * * * when approved and confirmed by the board * * * shall be deemed to be the finding * * * or award of the board."

Our oft-quoted rule that the findings of fact by the Board will not be disturbed unless the evidence clearly preponderates against them presupposes that the findings were made by an unbiased Board and referees in a similar setting. This is the type of bias which gives rise to the statutory rules on disqualification of jurors. The Federal and State Constitutions require no less. Because the courts, including this court, have repeatedly indulged in the presumption that public officials do their legal duty, the courts zealously guard against any situation in which the possibility of an unfair hearing may occur.

It was because of our concern for the hearing procedures upon which we rely that our alternative writ in this cause was granted.

It is charged in the petition that the referee does not prepare a transcript of the hearing (unless an appeal be taken) and the Board acts, not upon a transcript, but upon the findings and recommendations of the referee. Upon the hearing, counsel for the respondent admits that such a situation prevails.

Previously in State ex rel. Mueller v. District Court, 87 Mont. 108, 285 P. 928, 930, a somewhat similar matter was before this court in an original proceeding. We had this to say:

"* * * An accused officer is guaranteed a trial upon the charges against him before an independent, specially created tribunal which has exclusive jurisdiction of the subject matter. In other words, the police commission is

a special tribunal, created by statute, having quasi-judicial powers to hear and determine charges preferred against a member of the police department. It is a subordinate and administrative tribunal, vested with disciplinary powers, and is not limited by the provisions of the Constitution which apply to courts. People ex rel. Flanagan v. Board of Police Com'rs, 93 N.Y. 97; People ex rel. Meyer v. Roosevelt, 23 App.Div. 514, 48 N.Y.S. 537, 540; Id., 155 N.Y. 702, 50 N.E. 1121.

"The statute makes no provision for the disqualification of members of the commission on the ground of bias or prejudice, and it must be held, in accordance with the law, that, regardless of the personal opinions of its members, this tribunal has exclusive jurisdiction of the subjects delegated to it, and its members are not vulnerable to such attack. Even with respect to judicial officers, it has been held in this state that, unless the statute provides a remedy declaring that bias or prejudice on the part of a judge shall be a disqualification, it cannot be lodged against the officer. In re Davis' Estate, 11 Mont. 1, 27 P. 342; In re Weston, 28 Mont. 207, 72 P. 512.

"The rule of disqualification does not apply to officers not judicial, although every case may call for the exercise of judgment and discretion. Works on Jurisdiction, 409; State ex rel. Heimburger v. Wells, 210 Mo. 601, 109 S.W. 758.

"* * * Unless a statute provides that upon the filing of a disqualifying affidavit the officer challenged is deprived of jurisdiction—of the power to hear and determine the particular case—the jurisdiction of the officer sought to be thus challenged is not affected.

"* * * In the present case the district court already has exceeded its jurisdiction. It did so in entertaining the application and in issuing a restraining order, which is still in effect and which, unless annulled by this court,

may remain in effect for an indefinite time. Clearly the proceeding pending before the police commission of Lewistown was none of the district court's business.''

The statute empowering the Industrial Accident Board to administer the Workmen's Compensation Act is quite broad. It provides:

"92-814. (2940) *Powers of Board.* The board is hereby vested with full power, authority, and jurisdiction to do and perform any and all things, whether herein specifically designated or in addition thereto, which are necessary or convenient in the exercise of any power, authority, or jurisdiction conferred upon it under this act.''

The express authority includes the authority to employ referees or examiners. Sections 92-113, 92-114 and 92-816, R.C.M. 1947. There is no provision for the disqualification of any member of the board or of any of its employees.

We see some difference in the instant case and the Mueller case because here the statute makes the referee's findings those of the Board. However, not having the facts giving rise to a conflict of interest on the part of the hearing examiner, we feel bound by the Mueller case. We are not prepared to say that *ipso facto* an insurance adjuster, not representing the carrier, has a conflict of interest. In passing, we do warn the Board and all administrative boards and tribunals that they should zealously guard against any appearance of unfairness in the conduct of their hearings. The Board in the instant claim should satisfy itself that the insurance adjuster, herein involved, is free from any conflict of interest or prejudice.

For the reasons stated, the alternative writ is quashed.

MR. CHIEF JUSTICE HARRISON and MR. JUSTICES DOYLE, ADAIR and JOHN C. HARRISON concur.