[No. E003919. Fourth Dist., Div. Two. May 10, 1988.]

FONTANA TEACHERS ASSOCIATION, Plaintiff and Appellant, v. FONTANA UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

1518

COUNSEL

Charles R. Gustafson, Kirsten L. Zerger, Rosalind D. Wolf, Diane Ross and Robert E. Lindquist for Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo and Ronald C. Ruud for Defendant and Respondent.

OPINION

McDANIEL, J.—

## FACTS

The Fontana Teachers Association (Association) is the exclusive representative for certificated employees of the Fontana Unified School District (District). Both the Association and the District are parties to a collective bargaining agreement (Agreement) which provides at paragraph 6.1.1 for the filing of grievances by any covered employee who alleges he or she has been "adversely affected by an alleged violation, misinterpretation or misapplication of this Agreement."[1] The Agreement also allows the Association to submit a grievance to arbitration.[2]

---

[1] "An individual grievance is a formal written allegation by a unit member that he has been adversely affected by an alleged violation, misinterpretation or misapplication of this Agreement."

[2] "6.2.6—the Association may . . . elect to submit the grievance to arbitration. . . . The arbitrator's authority shall be limited to deciding the issue submitted by the parties, and the

Deanna Roach, a probationary kindergarten teacher who had begun teaching in the 1984-1985 school year, was notified by the District, in March 1986, pursuant to Education Code section 44882, subdivision (b), that her services would not be needed for the 1986-1987 school year.[3] As a consequence of this notice, Ms. Roach filed a grievance alleging the District had violated article 39 of the Agreement, "Just Cause." According to her grievance, "Notice of Non-Reelection [pursuant to Ed. Code, § 44882, subd. (b)] does not comply with progressive discipline, is punitive and fails to demonstrate good and sufficient reason." The relief sought via the grievance procedure was the rescission of the notice of nonreelection.

The District denied the grievance at every procedural step, asserting that giving notice of nonreelection to a probationary teacher was neither a violation of the Agreement nor grievable. The Association, at the appropriate step of the process, requested that the grievance be submitted to arbitration. The District refused to submit to arbitration, and the Association then filed its petition to compel arbitration. The trial court denied the petition, and the Association has appealed.

### Issues on Appeal

1. Who decides what issues are subject to arbitration, the arbitrator or the court?

2. If the court decides that an issue is subject to arbitration, then is the issue here an issue subject to arbitration?

---

arbitrator shall have no power or authority to add to, subtract from, alter, delete, amend or modify the terms of this Agreement."

[3] Education Code section 44882, subdivision (b) was repealed by Statutes 1987, chapter 1452, section 367. In 1986, when Ms. Roach received her notice of nonreelection, section 44882, subdivision (b) provided: "(b) Every employee of a school district of any type or class having an average daily attendance of 250 or more who, after having been employed by the district for two complete consecutive school years in a position or positions requiring certification qualifications, is reelected for the next succeeding school year to a position requiring certification qualifications shall, at the commencement of the succeeding school year be classified as and become a permanent employee of the district.

"The governing board shall notify the employee, on or before March 15 of the employee's second complete consecutive school year of employment by the district . . . , of the decision to reelect or not reelect the employee for the next succeeding school year to such a position. In the event that the governing board does not give notice pursuant to this section on or before March 15, the employee shall be deemed reelected for the next succeeding school year.

"This subdivision shall apply only to probationary employees whose probationary period commenced during the 1983-84 fiscal year or any fiscal year thereafter."

The effect of this notice of nonreelection was that Ms. Roach was dismissed at the end of the school year. On appeal, the parties have treated nonreelection as the equivalent of a dismissal.

### DISCUSSION

1. *The Superior Court May Determine Whether an Issue Is Subject to Arbitration.*

■ On appeal, the Association initially argues that it is up to the arbitrator to determine whether the Agreement covers dismissals, and that therefore its petition to compel arbitration must be granted. The District argues that the superior court properly determined that the court, rather than the arbitrator, has jurisdiction to determine whether a particular issue is a proper subject of arbitration, and that, in fact, the issue of whether the progressive discipline provided for by the Agreement must be followed before a probationary teacher is dismissed is not an issue subject to arbitration.

Code of Civil Procedure section 1281.2 provides that if a petitioner alleges "the existence of a written agreement to arbitrate . . . and that a party thereto refuses to arbitrate . . . the *court* shall order the petitioner and the respondent to arbitrate the controversy *if it determines that an agreement to arbitrate the controversy exists, . . .*" (Italics added.)

■ The right to arbitrate is grounded in contract. (*Unimart* v. *Superior Court* (1969) 1 Cal.App.3d 1039, 1045 [82 Cal.Rptr. 249].) A motion to compel arbitration is in essence an action to compel specific performance of the parties' agreement to submit to arbitration. (*Harrison* v. *California State Auto. Assn. Inter-Ins. Bureau* (1976) 56 Cal.App.3d 657, 661 [128 Cal.Rptr. 514].) ■ As indicated by the language of section 1281.2, a court may properly interpret the parties' agreement to determine whether or not the parties have agreed to arbitrate a given controversy. An agreement may authorize an arbitrator, rather than a court, to determine whether a given controversy is subject to arbitration, but if it does not, then the court must make this determination. (*Retail Clerks Union, Local 775* v. *Purity Stores, Inc.* (1974) 41 Cal.App.3d 225, 231-232 [116 Cal.Rptr. 40].) The Agreement here does not authorize the arbitrator to determine the scope of what is subject to arbitration, and thus, we conclude that it is still the *court's*, not the arbitrator's, duty to determine whether or not the parties' agreement to arbitrate covers this particular dispute.

2. *The Superior Court Correctly Determined That the Parties' Agreement Does Not Require That Disputes Concerning the Dismissal of a Probationary Teacher Be Submitted to Arbitration.*

The collective bargaining Agreement contains an entire article, article 39, devoted to disciplining unit members. For example, section 39.1 provides,

in relevant part, that: "39.1 No unit member shall be warned, reprimanded, disciplined, reduced in rank, or suspended, with or without pay, without just cause and the utilization by the District of progressive correction and discipline." Section 39.3 provides: "39.3 Progressive discipline and correction shall include, but not be limited to, the following:"

- apprisal of the employment standard and consequences of noncompliance.

- verbal warning

- written warning if there has been a verbal warning about problem within past six months

- written reprimand if there have been two written warnings about similar action within past year.

Notably, article 39 does not contain any material related to unit member *dismissal* or nonreelection. Dismissal, as opposed to discipline, is mentioned in sections 39.4 and 39.9, which provide: "39.4 Nothing in this Article shall be construed to limit or in any way impair the rights of a unit member under the Education Code including Section 44944 *governing suspension and dismissals.* No unit member shall be *suspended* more than five (5) working days during a single school year. No *suspension* shall occur prior to application of the progressive discipline and correction procedure in paragraph 39.3 above, except as provided in section 39.6 herein. No *suspension* shall occur except after specific action of the Superintendent, or designee. *Suspensions shall not be deemed appropriate in cases of purely incompetent job performance.* (Italics added.)

"39.9 The parties recognize that procedures related to *dismissal* are presently governed exclusively by the provisions of the Education Code. In no event, however, shall any unit member be terminated without just cause *should such provisions be modified.*" (Italics added.)

 The Association's position is that statutory changes in the Education Code have modified provisions related to dismissal so as to call into play the application of the progressive discipline requirements of article 39 before the District may dismiss a unit member. The District's position is that the Agreement does not cover procedures for dismissing probationary teachers, and that in fact the Agreement could not cover such procedures as *they are preempted by the Education Code.*

Education Code section 44949, entitled "Cause, notice, and right to hearing required for dismissal of probationary employee" provided, before its amendment (by Stats. 1983, ch. 498, § 63, urgency, eff. July 28, 1983) that "The governing board's determination not to reemploy a probationary employee for the ensuing school year shall be for cause only. The determination of the governing board as to the sufficiency of the cause pursuant to this section shall be conclusive, but the cause shall relate solely to the welfare of the schools and pupils thereof. Cause shall include termination of services for the reasons specified in Section 44955, unless a collective agreement has been entered into in accordance with Section 44959.5. . . ." (Ed. Code, § 44949, subdivision (d).)

In 1983, the language of subdivision (d) quoted above was entirely deleted from section 44949. The substance of the deleted language was transferred to Education Code section 44948.5, subdivision (e), which section is restricted in its application to teachers whose probationary periods commenced *before* the 1983-1984 fiscal year. Here, Ms. Roach's probationary period began *after* the 1983-1984 fiscal year, and thus section 44948.5, subdivision (e) was not applicable to her situation. Instead, Education Code section 44882, subdivision (b), as amended in 1983 so as to relate to nonreelection of probationary teachers whose probationary periods began on or after 1983-1984, was applicable.

Section 44882, subdivision (b) provided: "Every employee of a school district . . . who, after having been employed by the district for two complete consecutive school years in a position or positions requiring certification qualifications, is reelected for the next succeeding school year . . . shall, . . . be classified as and become a permanent employee . . . [¶] The governing board shall notify the employee, on or before March 15 of the employee's second complete consecutive school year of employment by the district . . . , of the decision to reelect or not reelect the employee for the next succeeding school year. . . . [¶] This subdivision shall apply only to probationary employees whose probationary period commenced during the 1983-84 fiscal year or any fiscal year thereafter."

It is the Association's position that the fact that this section, which governed probationary nonreelections at the time Ms. Roach was dismissed, does not contain any language to the effect that the governing board's determination not to reelect a probationary teacher is "conclusive," indicates that the Legislature no longer intends to vest the determination of sufficiency of cause for termination solely with the district's governing board, and that this is the kind of modification of statutory provisions related to dismissal referred to in section 39.9 of the Agreement, which

modification triggers a requirement that Ms. Roach's dismissal be submitted to arbitration.

However, as the Association concedes, the case of *Grimsley* v. *Board of Trustees* (1987) 189 Cal.App.3d 1440 [235 Cal.Rptr. 85] (referred to by the parties as *California Teachers Association* v. *Board of Trustees of Muroc Joint Unified School District*), held that Education Code section 44882, subdivision (b) allowed probationary teachers in Ms. Roach's position to be "nonreelected," i.e., dismissed, *without cause*. (*Id.,* at p. 1450.) Nonetheless, the Association urges that the parties' Agreement gives probationary teachers a right not addressed in *Grimsley*—the right not to be *disciplined* without just cause or progressive discipline—and that in certain factual situations a notice of nonreelection can be a disciplinary act. According to the Association, it should be left up to the arbitrator to determine whether a given notice of nonreelection is really a disciplinary act, and if the arbitrator determines nonreelection was really discipline, then the arbitrator should be allowed to fashion some relief for the dismissed teacher, although the Association concedes that such relief could not include reinstatement.

The Association's entire argument turns on its premise that dismissal, via nonreelection, can be a form of discipline. However, even assuming that dismissal via nonreelection can be a form of discipline, we yet hold that the Education and Government Codes have preempted collective bargaining agreements as to this *particular* form of discipline.

Government Code section 3543.2 delineates the scope of representation under a collective bargaining agreement, and provides, in relevant part, "(a) The scope of representation shall be limited to matters relating to wages, hours of employment, and other terms and conditions of employment. 'Terms and conditions of employment' mean health and welfare benefits . . . , leave, transfer and reassignment policies, safety conditions of employment, class size, procedures to be used for the evaluation of employees, organizational security pursuant to Section 3546, procedures for processing grievances pursuant to Sections 3548.5, 3548.6, 3548.7, and 3548.8, *and the layoff of probationary certificated school district employees, pursuant to Section 44959.5 of the Education Code. . . . All matters not specifically enumerated are reserved to the public school employer and may not be a subject of meeting and negotiating, . . .*

"(b) Notwithstanding Section 44944 of the Education Code [related to dismissal or suspension proceedings of permanent employees for cause], the public school employer and the exclusive representative shall, upon request of either party, *meet and negotiate regarding causes and procedures for*

*disciplinary action, other than dismissal,* including a suspension of pay for up to 15 days, affecting certificated employees. If the public school employer and the exclusive representative do not reach mutual agreement, then the provisions of Section 44944 of the Education Code shall apply." (Italics added.)

As the foregoing language makes clear, subdivision (b) specifically excludes dismissal of certificated employees from the scope of arbitration pursuant to a collective bargaining agreement, even though the language of the subdivision indicates a legislative recognition that dismissal may be a form of disciplinary action.

The Association contends, however, that, "[o]n its face 3543.2(b) applies only to those actions within the ambit of Education Code § 44944," and that "[s]ince SB 813 made 44944 inapplicable to certificated probationary employee dismissals by moving mid-year probationary dismissals from § 44949 to § 44948.3, § 44944 now applies only to permanent employees, not probationary employees." Therefore, the Association argues, "the restriction on negotiations contained in Gov't Code § 3543.2(b) to 'disciplinary action, other than dismissal' has no effect on the scope of negotiations regarding *probationary* employee discipline and dismissals." (Italics added.)

This argument is without merit. First, according to the clear language of subdivision (b), the employer and exclusive representative shall "meet and negotiate regarding causes and procedures for disciplinary action, other than dismissal, . . . *affecting certificated employees.*" The language refers to *"certificated employees,"* not *"permanent certificated employees,"* and thus applies to *all* certificated employees, including probationary teachers. Second, the fact that subdivision (b) begins "Notwithstanding Section 44944 of the Education Code . . . ," and that section 44944 now relates to *permanent* employees, does not mean that subdivision (b) of Government Code section 3543.2 does not apply to *probationary* teachers. Instead, it simply means that subdivision (b)'s requirement that, as to permanent employees, suspensions of pay for up to 15 days must be the subject of meeting and negotiation despite the fact that Education Code section 44944 sets out a specific hearing procedure (as opposed to an arbitration) for dealing with *suspension* of a permanent teacher without pay. This interpretation of section 3543.2, subdivision (b) is reinforced by the language of Education Code section 44934, pursuant to which the hearing process of section 44944 is initiated, states, as to the suspension of a permanent employee, "Suspension proceedings may be initiated pursuant to this section only if the governing board has not adopted a collective bargaining agreement pursuant to subdivision (b) of Section 3543.2 of the Government Code," and by the fact that

Education Code section 44932, which sets out the grounds for dismissal and suspension of permanent employees, provides, in subdivision (b): "The governing board of a school district may suspend without pay for a specific period of time . . . a permanent certificated employee. . . . This authorization shall not apply to any school district which has adopted a collective bargaining agreement pursuant to subdivision (b) of Section 3543.2 of the Government Code."

Based on the foregoing, we agree with the trial court that Ms. Roach's dismissal was not a proper subject of arbitration.

■ Furthermore, because the school district had the absolute right to dismiss Ms. Roach, a probationary teacher, pursuant to Education Code section 44882, subdivision (b) without cause, without a statement of reasons, and without any redress by way of administrative hearing or appeal (*Grimsley* v. *Board of Trustees, supra,* 189 Cal.App.3d at pp. 1447-1448), and because (as the Association concedes) an arbitrator would have had no power to reinstate her, even if her nonreelection was clearly punitive or disciplinary in nature, to submit this issue to arbitration would have been a pointless act. The arbitrator might have ordered some lesser discipline, e.g., a verbal or written warning but ordering some lesser punishment is meaningless to a teacher who was no longer employed, and one whom the arbitrator could not reinstate. Counsel for the Association could not come up with any purpose to be served by submitting the issue to arbitration, and neither can we. "The law neither does nor requires idle acts." (Civ. Code, § 3532.)

## DISPOSITION

The judgment is affirmed.

Campbell, P. J., and Hews, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 17, 1988.